**UNITED STATES BANKRUPTCY COURT**

DISTRICT OF NEW JERSEY
M.L. KING, JR.  FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH                                        (973) 645-4693
  BANKRUPTCY JUDGE                                    Fax: (973) 645-2606

<u>**NOT FOR PUBLICATION**</u>

```
┌─────────────────────────────┐
│            FILED            │
│   JAMES J. WALDRON, CLERK   │
│                             │
│        JAN. 6, 2011         │
│                             │
│    U.S. BANKRUPTCY COURT    │
│         NEWARK, N.J.        │
│                             │
│ BY:  s/ Ronnie Plasner, DEPUTY │
└─────────────────────────────┘
```

January 6, 2011

<u>**LETTER OPINION**</u>
<u>**ORIGINAL FILED WITH THE CLERK OF THE COURT**</u>

The Law Offices of Marc G. Alster          Stagg, Terenzi, Confusione & Wabnik, LLP
Marc G. Alster, Esq.                       Thomas E. Stagg, Esq.
Two University Plaza, Suite 311            Ronald M. Terenzi, Esq., *pro hac vice*
Hackensack, New Jersey 07601               401 Franklin Avenue, Suite 300
***Counsel for Debtor***                   Garden City, New York 11530
                                           ***Counsel for Chase Bank USA, N.A.***

Re:    **Ana Flores, Debtor**
       <u>**Case No. 10-34546 (DHS)**</u>

Dear Counsel:

        Before the Court is a motion filed by the Debtor, Ana Flores ("Debtor"), seeking an
Order finding Chase Bank USA, N.A. ("Chase") in willful violation of the automatic stay
pursuant to 11 U.S.C. § 362(a).  In addition, the Motion seeks (1) turnover of the subject funds to
the Debtor pursuant to 11 U.S.C. §§ 542 and 543 and (2) costs, attorney's fees, sanctions, and
punitive damages for contempt pursuant to 11 U.S.C. § 362(k)(1).

Page 2
January 6, 2011

In opposition, Chase argues there has been no violation of the automatic stay, willful or otherwise. Chase asserts that a pre-petition turnover order entered in the state court terminated the Debtor's interest in the subject funds. As such, the automatic stay would not extend to those funds because they were no longer property of the Debtor when the petition was filed.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. The motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. For the following reasons, the Debtor's motion is denied.

## STATEMENT OF FACTS

The material facts are not disputed. Chase is a creditor of the Debtor by way of a November 30, 2009 Judgment ("Judgment") in state court. (Aff. of James Padgett in Opp'n to Debtor's Mot., ¶ 4) ("Padgett Aff.") The Debtor included the debt owed to Chase on her schedules.

On January 25, 2010, Chase delivered a Writ of Execution pertaining to the Judgment to Michael Guerra, an officer of the state court. (*Id.* at ¶ 5) The Debtor maintained a bank account at PNC Bank ("PNC"). (Cert. by Marc G. Alster in Supp. of the Debtor's Mot., ¶ 4) ("Alster Cert.") On March 9, 2010 the PNC account was levied upon in the amount on deposit of $1,984.51 and notice of the levy was served on PNC and the Debtor. (Padgett Aff., ¶ 6) As a result, on the same date, PNC placed a hold on the Debtor's account. (*Id.* at ¶ 7) On July 20, 2010, Chase filed a motion in state court for turnover of the funds in the account and served notice of the motion upon PNC and the Debtor. (*Id.* at ¶ 8) On August 3, 2010, the state court, entered an order directing the turnover of the amount levied from PNC to Chase ("Turnover Order"). (*Id.* at ¶ 9) On August 9, 2010, Chase served the Turnover Order on court officer Guerra, PNC and the Debtor. (*Id.* at ¶ 10)

The next day, August 10, 2010, the Debtor filed her petition for relief under Chapter 7 of the Bankruptcy Code. Later that day, Debtor's counsel notified Chase of the filing and made the request that Chase immediately release the levy on the account at PNC. (Alster Cert., ¶ 4) On August 12, 2010, Chase notified court officer Guerra and requested a release of the levy and return of the Writ of Execution to the state court marked "partially satisfied." (*Id.* at ¶ 5)

On August 13, 2010, PNC turned over the funds from the Debtor's account to Chase, pursuant to the Turnover Order. (Alster Cert., ¶ 6) In light of these facts, and because Chase continues to hold the subject funds, which the Debtor believes should be given to her, the Debtor

Page 3
January 6, 2011

contends that Chase is in willful violation of the stay.  As such, the Debtor asserts that she is entitled to recover costs, attorney's fees, and punitive damages, in addition to having an award of sanctions issued against Chase.

## DISCUSSION

The sole issue in determining whether the action taken by Chase is a violation of the automatic stay is whether the funds in the Debtor's account were property of the estate at the time the Bankruptcy Petition was filed.  Chase argues that it was not property of the estate because the Debtor lost whatever legal and equitable interest she retained in the funds when the Turnover Order was signed in state court on August 3, 2010.

Although the scope of the automatic stay is extremely broad, it is well-settled that the stay does not extend beyond property of the Debtor or the estate.  11 U.S.C. § 362(a); *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 696 (3d Cir. 1989) ("As Congress intended, "the automatic stay is one of the fundamental *debtor* protections provided by the bankruptcy laws. It gives the *debtor* a breathing spell from his creditors."") (emphases added) (citation omitted). The bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case . . . " 11 U.S.C. § 541.  In determining the extent of a debtor's legal or equitable interests in property, bankruptcy courts look to state law.  *United States v. Butner*, 440 U.S. 48, 99 S. Ct. 914 (1979); *In re Brannon*, 476 F.3d 170 (3d Cir. 2007).

In New Jersey, a levy on the debtor's property divests the debtor of control of that property, placing it "under the dominion of a court officer."  *Sylvan Equipment Rental Corp. v. C. Washington & Son, Inc.*, 292 N.J. Super. 568, 573-74, 679 A.2d 213, 216 (Law Div. 1995). The act of levying on the debtor's personal property perfects a judgment lien.  *In re Blease,* 605 F.2d 97 (3d Cir. 1979) (citing *Vineland Sav. & Loan Ass'n v. Felmey*, 12 N.J. Super. 384, 393 (Ch.Div. 1950)).  As such, the levying creditor has a legal interest in the subject property.  The interest, created by the act of perfection, relates back to the date of delivery of the writ of execution to the court officer.  *In re Ramco Am. Int'l, Inc.*, 754 F.2d 130, 132 (3d Cir. 1985).

The turnover proceeding is the mechanism by which courts determine priorities among levying creditors to a debtor's account and direct a bank holding the debtor's funds to pay those funds over to creditors rather than to the debtor.  N.J.S.A. 2A:17-63; *Sylvan*, 292 N.J. Super. at 571.  "A turnover order . . . is granted if there has been a levy on a "debt due" a "judgment debtor" and the "garnishee" admits the "debt.""  *PRA III, LLC v. Capital One, N.A.*, 2009 N.J. Super. Unpub. LEXIS 3213 (App. Div. July 23, 2009).  Thus, the turnover proceeding marks the final judicial determination of the debtor's interest in the account and provides the debtor and the bank a final opportunity to object to the levy and preserve whatever equitable rights remain.  *See Sylvan*, 292 N.J. Super. at 573 ("Besides asserting dominion over the bank account, the lienor was established and the lien amount and property liened were established.  It was not necessary for the constable to take any further action, except to receive the money and return the writ

Page 4
January 6, 2011

satisfied."); *see also In re Yamamoto*, 21 B.R. 58, 59 (Bankr. D. Haw. 1982) ("having failed to take proper steps to preserve any equitable interest in the garnished wages, [the debtors] had no interest in the wages as property."). After the turnover order is entered, a garnishee-bank no longer owes money to the judgment debtor-account holder. Rather, there is an obligation to turn that money over to the levying creditor.

In the present case, Chase perfected its interest in the Debtor's PNC account on March 9, 2010, when Chase levied on the account and notified the Debtor and PNC. Under New Jersey law, the actual date of Chase's perfected interest relates back to the delivery of the Writ of Execution to Mr. Guerra on January 25, 2010. Thus, Chase held its perfected interest in the funds in the Debtor's account at PNC for nearly seven months prior to the petition date, well outside the preference period. During this time, the Debtor made no effort to challenge the levy or object to Chase's interest. The Debtor also had an opportunity to object to the proposed Turnover Order at the hearing on July 20, 2010, but that motion was not opposed. Accordingly, upon the entry of the Turnover Order, the Debtor was divested of any remaining equitable or legal interest in the account and Chase did not violate the automatic stay in not delivering the funds to the Debtor.

## **CONCLUSION**

Under New Jersey law, the Turnover Order cut off the Debtor's legal and equitable interest in the account on August 3, 2010. The Debtor did not file her petition for bankruptcy relief until August 10, 2010. Accordingly, the automatic stay did not extend to the account and Chase is not in violation of the stay. The Debtor's motion is hereby denied.

An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

Very truly yours,

*s/  Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure